UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DEAN MASOUD and TAREN MASOUD, individually and as Guardians Ad Litem for their minor children ALAE M. and AMALIA M.,

        Plaintiffs,

  v.

COUNTY OF SAN JOAQUIN, et al.,

        Defendants.

NO. CIV. S-06-1170 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

    Plaintiffs Dean Masoud and Taren Masoud, on behalf of themselves and as guardians ad litem for their minor children, Alae M. ("Alae") and Amalia M. ("Amalia") (collectively, "plaintiffs"), assert claims against defendants County of San Joaquin ("the county"), its employees Stephanie Evans ("Evans"), Arlene Miller ("Miller"), and Ken Egi ("Egi") (collectively, "county defendants"), the City of Stockton, and its employees David Ambrose ("Ambrose"), Darren Sandoval ("Sandoval"), Sergeant Osbourne ("Osbourne") and Sergeant Leslie ("Leslie")

(collectively, "city defendants") for violations of their constitutional rights under the Federal Civil Rights Act, 42 U.S.C. section 1983, and violations of state law.  County defendants move to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Specifically, county defendants contend that they are entitled to immunity from plaintiffs' federal and state law claims.  For the reasons set forth herein, defendants' motion to dismiss is DENIED in part and GRANTED in part.

## BACKGROUND[2]

On May 31, 2005, plaintiff Dean Masoud was watching his children Alae, then two years old, and Amalia, then seven months old, while plaintiff Taren Masoud was at a hair appointment. (Pls.' Compl., filed May 29, 2006 ["Compl."] ¶¶ 36, 40.)  At some point in the early afternoon, Amalia fell asleep while being held by Mr. Masoud, and he subsequently put her down to nap on the master bed.  (Compl. ¶ 41.)  Plaintiff asserts that he was careful to surround Amalia with a wall of pillows because she had rolled off that same bed a few days earlier and landed on the carpeted floor.  (Id.)  Later, plaintiff was talking on the phone to his brother in New York when he heard a light thud followed by crying from the master bedroom.  (Compl. ¶ 42.)  He told his brother that something had happened and hung up.  (Id.)

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

[2] All facts herein are taken from plaintiffs' Complaint, filed May 29, 2006.

2

Initially, after picking up Amalia and examining her, Mr. Masoud noted no apparent injuries. (Compl. ¶ 43.) About a half an hour later, however, when Amalia would not stop crying, Mr. Masoud noticed that she was not moving her left leg and determined that she needed medical attention. (Compl. ¶ 44.) Mrs. Masoud was still not home, and Mr. Masoud attempted to reach her on her cell phone approximately thirty-five times, to let her know what had happened and because she had the car seats for both children in her car. (Compl. ¶ 45.) Plaintiff finally reached Mrs. Masoud, and she arrived home at 5:25 p.m.

After leaving Alae with a neighbor, the couple took Amalia to the hospital, arriving at approximately 6:15 p.m. (Compl. 46-47.) X-rays were taken of the child's leg and revealed that Amalia had fractured her left femur above the knee. (Compl. ¶ 48.) Plaintiffs were at the hospital for over five hours. (Compl. ¶¶ 48-59.)

At 11:15 p.m., police officers Osbourne, Ambrose, Sandoval and Leslie arrived at the hospital and informed the Masouds that a doctor had reported Amalia's break as "suspicious" and that they needed to investigate. (Compl. ¶ 56.) Mr. Masoud relayed to the officers how Amalia had rolled off the bed, and Osbourne asked if the officers could go to the house and see the bed. The officers also wished to speak with Mr. Masoud's brother to verify Mr. Masoud's version of the events, and Mr. Masoud had left his cell phone containing his brother's number at the house. (Compl. ¶ 58.) Mr. Masoud and Officer Sandoval left for the house, and Mrs. Masoud and Amalia, accompanied by Ambrose, followed after Amalia's leg had been set in a cast.

When Mr. Masoud and Sandoval arrived at the house, Mr. Masoud called his brother. (Compl. ¶ 60.) Mr. Masoud's brother verified plaintiff's version of the events to Sandoval. (Id.) After Mrs. Masoud arrived at the house, she was asked to go next door and retrieve Alae. Although Alae was sleeping at the time, Osbourne asked Mrs. Masoud to wake him up so that he could be interviewed. (Compl. ¶ 61.) In the presence of Osbourne, Mrs. Masoud asked Alae what had happened to Amalia, and Alae replied "Amalia fell off the bed." (Compl. ¶ 62.)

Ultimately, at approximately 1:30 a.m., Osbourne informed plaintiffs that because the emergency room doctor had called Child Protective Services, the children would have to be taken into protective custody that night. (Compl. ¶ 63.) The Masouds were told that if they refused to let their children be taken into custody, they would be arrested. (Compl. ¶ 64.)

Each of the officers allegedly informed the Masouds that they would have the children back soon, if not the next day. Osbourne and at least one other officer stated that the removal was just "part of the procedure." (Compl. ¶ 65.) Defendant officers implied that the removal was not their decision, but attributable to some other person or entity. (Id.) The children were then taken outside, where a woman plaintiffs believe was an employee or agent of the county was waiting with a minivan to take the children. (Compl. ¶ 67.) Osbourne told the Masouds that they would be contacted by a social worker the next morning. (Compl. ¶ 70.)

The next day, defendant Egi, a case worker with the Human Services Agency, a department of the county (Compl. ¶ 16),

4

visited the Masouds at home.  (Compl. ¶ 74.)  He informed them that there would be a hearing on June 3, 2005, at the courthouse and that their children would probably be returned to them then.  (Compl. ¶ 75.)  In response to their questions, he also said they would not need an attorney at the hearing.  (Id.)  Subsequently, the case was transferred to defendant Evans, (Compl. ¶ 78), who handled the case until the children were returned to their parents six weeks later.  (Compl. ¶ 76.)

Prior to these events, the Masouds had no criminal or child welfare history.  (Compl. ¶ 74.)  Plaintiffs allege that during the six weeks the children remained in custody, defendants committed a number of violations, including: (1) repeatedly promising and failing to deliver Mrs. Masoud's frozen breast milk to Amalia, who was breastfeeding at the time and was allergic to regular dairy milk (Compl. ¶¶ 66, 74, 77-79, 81, 88, 91); (2) falsely assuring the Masouds that they did not need to be represented by counsel at the initial hearing (Compl. ¶ 75); (3) submitting the children for unauthorized medical examinations and inoculations (Compl. ¶¶ 89-90); and (4) excluding exculpatory evidence from the reports submitted to the juvenile court.  (Compl. ¶¶ 92, 94.)

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

**ANALYSIS**

**I.   42 U.S.C. § 1983 Claim**

Plaintiffs allege county defendants violated their right to familial association, as protected by the Fourteenth Amendment, through the continued detention of Alae and Amalia from the time of removal until the family's reunification six weeks later. Defendants contend that they are entitled to absolute immunity for their actions.

It is well established that courts grant absolute immunity from liability to those individuals whose functions are necessary to the judicial process.  At early common law, this included such

6

individuals as judges, grand jurors, and prosecutors. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 419, 424 (1976). This doctrine has been extended to the actions of other state actors when they engage in functions that are quasi-prosecutorial or quasi-judicial. <u>Kalina v. Fletcher</u>, 522 U.S. 127 (1997) (citing <u>Forrester v. White</u>, 484 U.S. 219, 229 (1988)).

The touchstone of the absolute immunity analysis is the function performed, not the title of the actor. <u>Miller v. Gammie</u>, 335 F.3d 889, 897 (9th Cir. 2003) (*en banc*) (citing <u>Kalina v. Fletcher</u>, 522 U.S. 118, 127 (1997)). "The relation of the action to a judicial proceeding . . . is no longer a relevant standard." <u>Id.</u> at 897. Rather, the court should "look to functions that enjoyed absolute immunity at common law in 1871" when determining absolute immunity under section 1983. <u>Id.</u> The burden is on the party claiming absolute immunity to identify the function that received absolute immunity at common law that is a counterpart to the party's actions. <u>Id.</u>

The Ninth Circuit has extended absolute immunity to social workers when they perform functions similar to those of a prosecutor:

> Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.

7

Meyers v. Contra Costa County Dep't of Soc. Servs. 812 F.2d 1154, 1157 (9th Cir. 1987).  When it applies, the shield of absolute immunity protects even against allegations of negligence, falsifying evidence, abuse of discretion or bad faith during the initiation and pursuit of dependency proceedings.  See e.g. Doe v. Lebbos, 348 F.3d 820, 826 (9th Cir. 2003) (failure to investigate possible exculpatory evidence and fabricated evidence); Mabe v. San Bernadino County, 237 F.3d 1101, 1109 (9th Cir. 2001) (social worker alleged to have improperly conducted the investigation and falsified evidence in juvenile court proceedings); Hennessey v. State of Wash., Dep't of Soc. & Health Serv., 627 F. Supp. 137, 140 (E.D. Wash. 1985) (caseworker allegedly divulged false and misleading information to county prosecutor, prompting initiation of child dependency proceedings); Pepper v. Alexander, 599 F. Supp. 523, 526-27 (D.N.M. 1984) (employees allegedly acted in bad faith in instituting proceeding to deprive plaintiff of parental rights).

However, to the extent "that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available." Miller, 335 F.3d at 898.  Thus, the question of whether absolute or qualified immunity applies is a highly factual inquiry that may not easily be resolved at the initial pleading stage.  See id. at 899 (finding that the lower court did not err in ordering limited discovery on the functions performed by the social workers, in order to rule on a motion to dismiss based on immunity).

Here, plaintiffs allege that defendants violated their constitutional right to familial association through the unreasonable and continued detention of the children. (Compl. ¶¶ 108-11.) Plaintiffs claim that defendants (1) presented false information to the juvenile court to get a court order justifying the detention, (2) unreasonably detained the children during the period between the removal and the initial detention hearing, and (3) failed to comply with California law requiring social workers to make a reasonable investigation and to consider reasonable alternatives to removal in cases of suspected child abuse.

As discussed above, defendants are entitled to absolute immunity for actions that were prosecutorial in nature and that aided them "in the preparation or presentation of [the] case to the juvenile court." Meyers, 812 F.2d at 1157. The submission of papers and testimony to the juvenile court has long been recognized as prosecutorial in nature and entitled to absolute immunity. See Parkes v. County of San Diego, 345 F. Supp. 2d 1071, 1086-87 (S.D. Cal. 2004); Lebbos, 348 F.3d at 826. In addition, social workers enjoy absolute immunity where they are acting pursuant to a valid court order. Mabe, 237 F.3d at 1109. Defendants are therefore entitled to absolute immunity from the claim that they submitted false or incomplete information to the juvenile court.

However, the validity of the detention of the children prior to the actual institution of dependency proceedings depends on whether exigent circumstances existed, and the reasonableness of defendants' actions in light of these circumstances. See Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 1999). Whether

9

plaintiffs' constitutional right to due process was violated by defendants' failure to comply with the applicable California laws is a similarly fact-specific inquiry.  Thus, with regard to plaintiffs' other allegations, the court cannot determine, on the limited facts before it, whether these actions were quasi-prosecutorial in nature or taken pursuant to a valid court order and thus, covered by absolute immunity.

Accordingly, defendants' motion to dismiss plaintiffs' section 1983 claims against them is GRANTED as to the allegation that they falsely or improperly submitted information to the juvenile court.  The motion is DENIED as to all other portions of this claim.

**II.   State Law Claims**

Plaintiffs also bring pendant state law claims for (1) violation of California Civil Code section 52.1, (2) intentional infliction of emotional distress, and (3) battery.

**A.   California Civil Code Section 52.1**

Plaintiffs' fourth cause of action alleges violations of California Civil Code section 52.1 against the individually-named defendants.  Section 52.1 provides that "any individual whose exercise or enjoyment of constitutional rights . . . has been interfered with" by "threats, intimidation or coercion" may bring a civil action on his or her own behalf.  Cal. Civ. Code § 52.1. Defendants argue that plaintiff's claims for violations of section 52.1 should be dismissed because plaintiffs do not allege facts that rise to the level of "threats, intimidation or coercion" within the meaning of the statute.

10

Plaintiffs allege that, through the removal and continued detention of the children, defendants have violated their Fourth "and/or" Fourteenth Amendment rights, as well as their rights under Article One, section thirteen of the California Constitution, "each . . . without due process of law." (Compl. ¶ 114.) Plaintiffs allege that each of the individually-named defendants intruded on plaintiffs' rights "with the threat of violence, coercion, menace and/or duress." Specifically, they allege that defendant Egi engaged in coercion when he represented to the Masouds that they would not need an attorney at the initial detention hearing. (Compl. ¶ 115.) Plaintiffs make no specific allegations with regard to any of the other individual county defendants.[3]

While no California court has interpreted the terms "threats, coercion, or intimidation," "the context of this section makes it clear that the statute is meant to protect against violence or the threat of violence." Rabkin v. Dean, 856 F. Supp. 543, 552 (N.D. Cal. 1994); see also Cole v. Doe 1 thru 2 Officers of the Emeryville Police Dept., 387 F. Supp. 2d 1084, 1103-04 (N.D. Cal. 2005) (finding sufficient facts alleged where police used law enforcement authority to effectuate a stop, detention, and search without probable cause). Additionally, the California Supreme Court recently noted that "section 52.1 does

---

[3] Plaintiffs also allege that the city police officers engaged in "the threat of violence, coercion, menace and/or duress" when they physically removed the children from the home and threatened to arrest the Masouds if they refused. (Compl. ¶¶ 64, 115.) Because the city defendants have not filed a motion to dismiss, the court does not address whether these allegations are sufficient to state a cause of action under section 52.1.

11

not extend to all ordinary tort actions . . . its provisions are limited to threats, intimidation or coercion that interferes with a constitutional or statutory right." <u>Venegas v. County of L.A.</u>, 32 Cal. 4th 820, 843 (2004).

Here, plaintiffs do not allege that Egi made any threats, express or implied, subjected them to any physical confrontation, or used any actual force. Even given the liberal pleading standard under Federal Rule of Civil Procedure 8(a), plaintiffs have not stated sufficient facts to support their allegation that any of the individual county defendants used threats, coercion, or intimidation.[4] Egi's statement, whether or not it was misleading, does not rise to the level of the exceptional type of tort section 52.1 was intended to cover. Consequently, defendants' motion to dismiss this claim is GRANTED.

**B. State Law Immunities**

Defendants contend that they are entitled to statutory immunity from liability for all of plaintiffs' state law claims.[5]

---

[4] Plaintiffs also allege that county defendants, to the extent that they made the initial decision to remove the children from the home, are somehow liable for the physical force and threats made by law enforcement in effecting that removal. However, plaintiffs cite no authority in support of their theory of vicarious liability. Moreover, plaintiffs have not alleged any facts that would justify imputing liability for the officers' alleged threats onto county defendants. Consequently, absent clear authority, the court declines to extend section 52.1 liability that far. <u>See</u> <u>Bay Area Rapid Transit Dist. v. Superior Court</u>, 38 Cal. App. 4th 141, 144-45 (1995) (declining to extend liability under section 52.1 "to fashion derivative liability for persons not present and not witnessing the actionable conduct" in the absence of clear legislative intent).

[5] Because the court found that plaintiffs failed to state a claim under section 52.1, the court does not address the issue of immunity relating to that claim.

California Government Code section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  Cal. Gov't Code § 821.6.  Under this law, public employees are generally immune from suit for all actions taken while instituting or prosecuting judicial or administrative proceedings, whether or not the acts were lawfully performed. Rosenthal v. Vogt, 229 Cal. App. 3d 69, 75 (1991); Randle v. City and County of San Francisco, 186 Cal. App. 3d 449, 457 (1986). In determining immunity under section 821.6, "[t]he critical question . . . is whether [the actions] were part of the initiation or prosecution process.  If they were, then they were protected by the immunity provided by . . . section 821.6." Cappuccio, Inc. v. Harmon, 208 Cal. App. 3d 1496, 1498-99 (1989). See also Kayfetz v. State of CA, 156 Cal. App. 3d 491, 496 (1984) ("[the] issue is whether the [action] is part of the 'prosecution' of a proceeding within the meaning of this section."). Furthermore, "immunity under section 821.6 applies only where public employees have acted  . . . 'within the scope of their employment.'"[6]  Javor v. Taggart, 98 Cal. App. 4th 795, 809 (2002).

---

[6] Plaintiffs have alleged that each of the defendants was "acting either individually and outside the scope of their [sic] employment, or within the scope, purpose and authority of their . . . employment." (Compl. ¶ 33.) Defendants argue that plaintiffs cannot simultaneously plead such inconsistent facts in an effort to hold the individuals and the county liable. Even if these claims are inconsistent, plaintiffs are entitled to plead in the alternative at this stage in the litigation. Fed. Rules Civ. Proc. 8(e)(2); accord Henry v. Daytop Village, 42 F.3d 89 (2d Cir. 1994).

13

Additionally, California Government Code section 820.2 states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Cal Gov't Code § 820.2.  This type of immunity applies only to deliberate and considered decisions in which a conscious balancing of the risks took place.  <u>Caldwell v. Montoya</u>, 10 Cal. 4th 972, 981 (1995) (citing <u>Johnson v. State of CA</u>, 69 Cal. 2d 782, 795 fn.8 (1962)).

California courts have applied these immunities quite expansively to social workers, and the protection afforded by these statutes is arguably much broader than the federal immunity discussed above.  See e.g. <u>Alicia T. v. County of L.A.</u>, 222 Cal. App. 3d 869 (1990) (finding social worker immune from claims of negligence and intentional misconduct for mistakenly removing a child); <u>Jenkins v. County of Orange</u>, 212 Cal. App. 3d 278 (1989) (holding social worker immune from claims, *inter alia*, that she disregarded evidence and misrepresented information to the court).

However, California Government Code section 820.21 abrogates social worker immunity for certain malicious acts.  Specifically, section 820.21 provides that social workers are not immune from liability for the following acts, if committed with malice: (1) perjury; (2) fabrication of evidence; (3) failure to disclose known exculpatory evidence; or (4) obtaining testimony by duress. Cal. Gov't Code § 820.21(a).  As defined in the statute, "malice" means "conduct that is intended . . . to cause injury to the

14

plaintiff or despicable conduct that is carried on . . . with a willful and conscious disregard of the rights and safety of others." Cal. Gov't Code § 820.21(b).

### 1. Intentional Infliction of Emotional Distress

Plaintiffs' fifth cause of action alleges intentional infliction of emotional distress against each of the individually-named defendants. Specifically, plaintiffs allege that the "facts and circumstances surrounding" the removal of the children, as well as a wide variety of actions taken by the defendants during the children's detention, were intended to cause severe emotional distress "and/or were done with reckless disregard for the likelihood of causing the plaintiffs severe emotional distress." (Compl. ¶ 119.)

Specifically, plaintiffs point to: (1) defendants' promises and subsequent failures to deliver Mrs. Masoud's breast milk to Amalia; (2) the performance of physical examinations of the children without the parents' knowledge or consent; (3) inoculations that were given to the children while they were in foster care; (4) Egi's statement that the Masouds did not need an attorney at the initial hearing; (5) representations by various defendants that the children would be returned soon; and (6) half-truths and the omission of exculpatory information in the reports submitted to the court. (Compl. ¶ 119.)

Defendants are entitled to immunity for those acts that were part of the initiation and prosecution of child dependency proceedings, or were the result of a considered exercise of discretion, with the exception of certain acts committed with malice. Cal. Civ. Code §§ 821.6, 820.2, 820.21. The performance

15

of the physical examinations is part of the initiation and prosecution of the dependency proceedings. California Welfare and Institutions Code section 324.5 permits the physical examination of suspected victims of child abuse by a medical professional. Moreover, the statute specifically provides for the submission of the results of this examination to the dependency court. Id. The results of the medical examination are part of both the investigation and prosecution the dependency proceedings. See Parkes, 345 F. Supp. 2d at 1083-84 (referring to a medical examination of an alleged child abuse victim as an "evidentiary examination"). Therefore, defendants are entitled to immunity for this action under Government Code section 821.6.

In addition, defendants are entitled to immunity for any alleged representations to the Masouds regarding the timing of the return of the children. Whether or when children who have been taken into protective custody will be returned to their parents is the very issue which juvenile dependency proceedings are designed to resolve. Resolution of this issue necessarily depends on the course the investigation takes, the cooperation of the parents involved, and the ultimate rulings of the juvenile court. Estimates by social workers as to whether or when children will be reunited with their parents are essentially tantamount to an evaluation of the prosecutorial case as it stands at a given time. Such statements are part of the prosecution of dependency proceedings. Consequently, any representations of this nature by defendants in the instant case are covered by the immunity conferred under section 821.6.

1    Although submissions by social workers to the juvenile
2 court, including the omission of exculpatory evidence, would
3 normally be covered by complete immunity under section 821.6 (See
4 Jenkins, 212 Cal. App. 3d at 283-84), plaintiffs have
5 successfully invoked the exception under section 820.21.
6 Plaintiffs have generally averred that "[d]efendants are guilty
7 of oppression, fraud, and/or malice" by way of their acts and
8 omissions.  (Compl. ¶ 100.)  At this early stage, such
9 generalized pleading is sufficient to invoke the exception to the
10 general grant of governmental immunity for false submissions or
11 the exclusion of exculpatory evidence during the juvenile
12 dependency proceedings.  See Fed. Rule Civ. Proc. 9(b) ("Malice,
13 intent, knowledge, and other condition of mind of a person may be
14 averred generally.").  Thus, defendants are not entitled to
15 immunity from the claims that they maliciously either submitted
16 false information to the courts or that they omitted exculpatory
17 information from their reports.

18    As to plaintiffs other allegations regarding defendants'
19 actions, the court cannot, at this time, determine that those
20 actions were covered by immunity as a matter of law.  Defendants'
21 alleged promises and failures to deliver breast milk to Amalia,
22 the administration of inoculations to the children, and Egi's
23 representation to the Masouds that they did not need an attorney,
24 cannot affirmatively be said to be part of the initiation or
25 prosecution of the dependency proceedings based upon the facts
26 presently before the court.  Additionally, the court cannot
27 determine at this stage in the proceedings whether these actions
28 were taken as the result of a considered exercise of discretion,

17

and thus entitled to immunity under section 820.2. Defendants' motion must be denied as to immunity for these allegations at this time.

As set forth above, defendants' motion to dismiss this claim is GRANTED in part, and DENIED in part.

### 2. Battery

Plaintiffs Alae and Amalia also bring a fifth cause of action for battery against the county.[7] Specifically, plaintiffs allege that Alae and Amalia were subjected to physical examinations "and/or inoculations" while in the "care, custody and control" of the county. (Compl. ¶¶ 122-124.) Plaintiffs do not identify the individuals who allegedly committed the battery.

Public entities in California are generally immune from direct tort liability. Cal. Gov't Code § 815. "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable." Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1112 (2004). California law does impose liability on public entities for acts committed by their employees while in the scope of employment. Cal. Gov't Code § 815.2. However, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability. Cal. Gov't Code § 815.2(b). "If the agent or employee is exonerated, the principal or employer cannot be held vicariously liable." Munoz,

---

[7] Although plaintiffs' Complaint states this as a cause of action against the Human Services Agency of San Joaquin County ("Agency"), plaintiffs also allege the Agency is a department of the county, and thus have properly served the county in this suit. (Compl. ¶ 30.)

1  120 Cal. App. 4th at 1113.  Liability only attaches "if and when
2  it is adjudged that the employee" acted tortiously.  Id.
3    Additionally, because public entities can only act through
4  individuals, "unless the employee is identified, the trier of
5  fact will not be able to determine if the elements needed to
6  assert vicarious liability have been proved.  Thus, the doctrine
7  clearly contemplates that the negligent employee whose conduct is
8  sought to be attributed to the employer at least be specifically
9  identified, if not joined as a defendant."  Id.
10   Until plaintiffs can identify the individuals responsible
11 for the battery and their respective relationships with the
12 county, they cannot maintain a claim for battery against the
13 county.  The county is immune from direct claims for battery
14 under section 815.2.  Consequently, defendants' motion to dismiss
15 this claim is GRANTED.

**CONCLUSION**

Based on the foregoing, the court finds as follows:
1. Defendants' motion to dismiss plaintiffs' federal claims brought under 42 U.S.C. § 1983 is GRANTED as to plaintiffs' claim based upon false or improper submissions to the juvenile court and DENIED as to all other claims.
2. Defendants' motion to dismiss plaintiffs' state law claim for violation of civil rights brought under California Civil Code section 52.1 is GRANTED.
3. Defendants' motion to dismiss plaintiffs' state law claim for intentional infliction of emotional distress is GRANTED as to claims arising from the physical

19

```
               examinations of the children and representations about
               when they would be returned.  The motion is DENIED as
               to all other claims.
        4.    Defendants' motion to dismiss plaintiffs' state law
               claim for battery is GRANTED.
    IT IS SO ORDERED.
DATED: November 8, 2006
```

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE